El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Comparece ante nos Peerless Oil & Chemicals, Inc. (POC) y solicita la revisión de la sentencia que emitió el Tribunal de Apelaciones, en la cual revocó la sentencia del Tribunal de Primera Instancia que condenó a los Herma-nos Torres Pérez, Inc. (HTP) y a varios accionistas de esa corporación —como garantizadores solidarios— a pagar $148,054.69 en concepto de intereses por mora. El foro ape-lativo intermedio fundamentó su contención en que el Tribunal de Primera Instancia carecía de jurisdicción para atender la controversia, luego que HTP presentó una peti-ción de quiebra.
En reiteradas ocasiones hemos manifestado que la pre-sentación de una petición de quiebra por un codeudor, fia-dor o garantizador de una deuda no afecta las obligaciones que frente a esa misma deuda tengan otros codeudores, garantizadores o fiadores. Sin embargo, nunca antes he-mos precisado si, en tiempo para apelarse una sentencia, *243 la petición de quiebra instada por un quebrado suspende el término que tienen las otras partes para revisarla, aun cuando haya una orden del tribunal que paraliza sus efec-tos postsentencia.
El presente recurso nos permite determinar qué efecto tiene sobre los términos de apelación la presentación de una petición de quiebra por un solo deudor en un caso en que existen varios garantizadores solidarios de la misma deuda. Evaluada la controversia, resolvemos que los ga-rantizadores solidarios de una deuda deben apelar la de-terminación conforme disponen las leyes y los reglamentos correspondientes, pues de lo contrario la sentencia u orden se convierte en final y firme. Como se sabe, la presentación de una petición de quiebra solo paraliza los procedimientos contra el deudor que la presentó. Por eso, revocamos al foro apelativo intermedio por falta de jurisdicción.
HH
POC es una corporación que se dedica al almacena-miento y venta de derivados de petróleo. Por su parte, HTP es una corporación dedicada a la compra, venta y distribu-ción de productos derivados del petróleo por acarreo.
El 29 de agosto de 2008, POC presentó una demanda en cobro de dinero contra HTP y los siguientes accionistas: Sr. Víctor Torres Oliveras, Sra. Hilda Pérez Souchet y la socie-dad de bienes gananciales compuesta por ambos; Sr. Víctor Torres Pérez, Sra. Annette Fuster Padilla y la sociedad legal de bienes gananciales compuesta por ambos; Sr. Ger-mán Rivera Colón, la Sra. Wanda Torres Pérez y la socie-dad legal de bienes gananciales compuesta por ambos, y el Sr. Luis Vélez Santiago, la Sra. María Torres Pérez y la sociedad legal de bienes gananciales compuesta por ambos. Les reclamó una deuda de $4,180,366.92 en concepto de venta de productos más intereses por mora, según pactados. Esa cantidad cubre diecinueve facturas de pro- *244 ductos derivados de petróleo que POC vendió a HTP. Espe-cíficamente, la responsabilidad de los recurridos surgía de unas garantías personales que cada uno de ellos firmó en las que se responsabilizaban solidariamente del pago de cualquier suma adeudada por HTP a POC.(1)
En la demanda, POC alegó que durante años ha vendido a HTP derivados de petróleo, como gasolina y diesel, para ser revendido a cuatro estaciones de servicio de su propie-dad y a otras seis estaciones propiedad de sus accionistas. Los términos de venta establecidos eran a crédito, otor-gando de siete a diez días para pagar las facturas. Explicó que luego de un tiempo, HTP comenzó a atrasarse en el pago de las facturas de los productos vendidos. Ello se de-bía a que varios accionistas, oficiales y directores de HTP compraban productos para sus estaciones de servicio y luego no pagaban. Así las cosas, solicitó que se condenara a HTP y a los recurridos a pagar la suma adeudada, más gastos de honorarios de abogado por temeridad, así como la concesión del remedio provisional de embargo como asegu-ramiento de sentencia conforme a la Regla 56.3 de Proce-dimiento Civil de 1979, 32 L.P.R.A. Ap. III.
En la contestación a la demanda, HTP y los recurridos aceptaron los números de las facturas, pero negaron sus cuantías por falta de información. Asimismo, admitieron que acumulaban una deuda con POC de más de cuatro *245 millones de dólares. Posteriormente, POC presentó una de-manda enmendada en la que repitió los mismos argumen-tos que esbozó en la primera, pero aclaró que la deuda acumulada por los recurridos era, hasta el momento, de $3,364,240.12, más intereses por mora según pactados, además de intereses legales y honorarios de abogado.
POC presentó una moción de sentencia sumaria parcial. En esta solicitó al tribunal que condenara a HTP a pagar $3,122,261 por las compras a crédito que adeudaba. En su oposición, HTP y los recurridos sostuvieron que no hay controversia acerca de la cantidad adeudada, pero sí de la legalidad de las facturas. Fundamentaron su contención en las disposiciones de las siguientes leyes: Ley de Gasolina, Ley Núm. 73 de 23 de junio de 1978, 23 L.P.R.A. sec. 1131 et seq.; la Ley de Control de Productores, Refinadores y Distribuidores Mayoristas de Gasolina, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101 et seq., y la Ley de Monopolios y Restricciones de Comercio, Ley Núm. 77 de 25 de jimio de 1964, según enmendada, 10 L.P.R.A. sec. 257 et seq. En síntesis, argüyeron que el De-partamento de Justicia presentó una querella contra POC ante el Departamento de Asuntos del Consumidor (DACo) en la que le acusó de violar las disposiciones del Art. 4 de la Ley Núm. 3, supra, 23 L.P.R.A. sec. 1108, al otorgar precios de venta distintos a sus compradores. A esa moción, POC replicó y alegó que los recurridos pretendían inducir a error al Tribunal y dilatar los procedimientos para no pa-gar lo que correspondía. Asimismo, resaltaron que no exis-tía controversia sobre la cuantía debida, ya que HTP la estipuló y aceptó. Concluyeron que la única controversia por resolver era en cuanto a las partidas de intereses por mora.
En el informe de conferencia con antelación a juicio, POC, HTP y los recurridos expusieron, en esencia, los mis-mos argumentos. En específico, HTP y los recurridos sos-tuvieron que las garantías personales que brindaron los *246 accionistas de la corporación no fueron dadas voluntaria-mente ya que su consentimiento estuvo viciado. Afirmaron que cuando los accionistas firmaron esas garantías, lo hi-cieron bajo la promesa de que POC continuaría supliéndo-les productos para generar flujo de efectivo y pagar las facturas vencidas.
El Tribunal de Primera Instancia dictó sentencia parcial. En esta declaró “con lugar” la demanda, pero úni-camente en lo referente al principal de la deuda. Condenó a HTP a pagar $3,122,261 con intereses legales desde que sometieron la demanda hasta su saldo total, honorarios de abogado computados a razón del diez por ciento de la tota-lidad de la deuda, más las costas y los gastos del pleito. Añadió que la única controversia pendiente era la cuantía de los intereses por mora.
Inconformes con el dictamen, HTP y los ahora recurri-dos acudieron al Tribunal de Apelaciones. Ese foro con-firmó la determinación del foro primario. Concluyó, ade-más, “que las alegaciones de que se ejerció presión e intimidación a los accionistas en su carácter personal para la compra de combustible a crédito, son hechos impertinen-tes a dilucidar en la demanda instada por POC”. Apéndice, pág. 108. Dijo esto porque la reclamación de POC a HTP era en términos de su deuda y no en contra de sus accio-nistas en su carácter personal y como garantizadores de la deuda. Por ello, razonó que la teoría de la intimidación argüida por los aquí recurridos ignoraba la sana práctica comercial que protege al suplidor. Asimismo, añadió que aceptarla obligaría a POC a suministrar el producto sin recibir su retribución a cambio. Por último, razonó que la querella no tenía relación sustancial con los negocios y con-tratos de las partes litigantes como mayoristas, ni cuestio-nan su validez jurídica y la deuda reclamada.
Posteriormente, se celebró juicio para dilucidar los inte-reses por mora. El 28 de septiembre de 2009, el foro prima- *247 rio dictó sentencia —copia de cuya notificación se archivó en autos el 2 de octubre del mismo año— y condenó a HTP y a los recurridos al pago de $148,054.69 por ese concepto.
Trabada así la controversia, el 19 de octubre de 2009, HTP presentó una moción en la que solicitó que se dejara sin efecto la sentencia. En ella, indicó que el 7 de julio de 2009 instó una petición de quiebra al amparo del Capítulo 11 de la Ley de Quiebras que paralizaba todos los procedimientos. Véase 11 U.S.C.S. secs. 1107-1174. Es ne-cesario señalar que HTP no informó la presentación de la petición de quiebra a POC ni al tribunal hasta la presen-tación de la moción de relevo de sentencia el 19 de octubre de 2009. Se sometió al procedimiento de quiebra. Ninguno de los accionistas garantizadores, es decir los recurridos, se han sometido al proceso de quiebra hasta el momento.
En conformidad con lo anterior, el 23 de octubre de 2009, el Tribunal de Primera Instancia emitió una resolu-ción, notificada el 13 de noviembre de 2009, en que para-lizó el caso para propósitos de los asuntos postsentencia. En la resolución, el foro primario expresó que se reservaba “jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso que dicha orden de paralización emitida por el Tribunal de Quiebra sea dejada sin efecto en cualquier momento con posterioridad a la fecha de la pre-sente resolución y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos”. Apén-dice, pág. 121.
El 9 de diciembre de 2009, POC presentó una moción para reabrir el caso al amparo de la Regla 51.7 de Proce-dimiento Civil de 2009, 32 L.P.R.A. Ap. V. Argüyó que la obligación contractual por la que se radicó el caso en cobro de dinero tiene una serie de garantizadores solidarios que no están acogidos al procedimiento de quiebra. Por consi-guiente, tienen la obligación de responder por su cumplimiento. El 22 de enero de 2010, el Tribunal de Pri- *248 mera Instancia emitió una orden en que autorizó la reaper-tura del pleito respecto a los accionistas de HTP y permitió tomar la deposición.
Insatisfechos, los recurridos acudieron al Tribunal de Apelaciones. En esencia, atribuyeron al foro primario errar por impedir la presentación de prueba sobre el supuesto vicio del consentimiento de los accionistas al momento de obtenerse sus garantías personales. Por su parte, POC pre-sentó una moción de desestimación por entender que el recurso era tardío. Explicó que los garantizadores solida-rios no formaban parte de la solicitud de quiebra, por lo que la paralización de los procedimientos que decretó el foro primario no los cobijaba. Por ello, esbozaron que el recurso se presentó fuera del término de treinta días con-tados desde que se archivó en autos copia de la notificación de la sentencia.
El Tribunal de Apelaciones acogió el recurso como cer-tiorari, lo expidió y revocó el dictamen del foro primario. Concluyó que el Tribunal de Primera Instancia erró al sos-tener la Sentencia de 28 de septiembre de 2009, pues luego del 7 de julio de 2009, fecha en que HTP presentó su soli-citud de quiebra, el tribunal local carecía de jurisdicción para tomar cualquier determinación en el pleito. Por ende, el foro apelativo determinó que la Sentencia de 28 de sep-tiembre de 2009 era nula. El Tribunal de Apelaciones aña-dió que su sentencia anterior no era final y firme, pues los procedimientos contra HTP se paralizaron desde la presen-tación de la petición de quiebra el 7 de julio de 2009. Por consiguiente, concluyó que cualquiera de las partes podía solicitar la reconsideración o recurrir oportunamente de ese dictamen. Por último, decretó que a pesar de que POC alega que los accionistas son deudores solidarios, la sen-tencia que condenó a HTP al pago de los $3,122,261 no los incluyó como deudores solidarios y, además, no ha adqui-rido finalidad. Por ello, POC no podía requerirle a los ac-cionistas que sufragaran la totalidad de la deuda antes de *249 que la sentencia del Tribunal de Primera Instancia advi-niera final y firme.
No conteste con esa determinación, el 15 de diciembre de 2010, POC recurrió ante nos. En su petición atribuyó que el foro apelativo intermedio se equivocó (1) al asumir jurisdicción sobre un recurso de apelación que se presentó cinco meses tarde; (2) al acoger el recurso como certiorari cuando el dictamen apelado no constituía una resolución interlocutoria; (3) al determinar que POC no podía reco-brar su acreencia a los recurridos por entender que no fue-ron incluidos en la sentencia parcial; (4) al determinar que POC no podía recobrar su acreencia directamente de los accionistas, aun cuando estos son garantizadores solida-rios y responden ante el acreedor aunque no medie senten-cia en contra del deudor y; (5) al dejar sin efecto la senten-cia en cuanto a los recurridos, toda vez que la paralización automática del proceso legal por la quiebra de uno de los codemandados no se extiende a los otros que no son parte de la petición de quiebra.
El 29 de abril de 2011 expedimos el auto. Le otorgamos un plazo a la parte recurrida para que presentara su ale-gato y le apercibimos que de no recibirse en el término dispuesto, el caso quedaría sometido sin su comparecencia. La parte recurrida nunca compareció. Así, pues, con el be-neficio de la comparecencia de la parte peticionaria y con los documentos que obran en el expediente, procedemos a resolver.
HH I — I
A. La jurisdicción es el poder o autoridad que posee un tribunal para decidir casos o controversias. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 D.P.R. 675, 682 (2011). Véanse, además: González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 854 (2009); ASG v. Mun. San Juan, 168 D.P.R. 337, 343 (2006). La falta de jurisdicción *250 de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. Souffront v. A.A.A., 164 D.P.R. 663, 674 (2005). Por eso, es importante que las par-tes cumplan con los términos que dispone la ley para acu-dir en revisión de las sentencias y resoluciones.
En innumerables ocasiones “hemos advertido que los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen”. S.L.G. Szendrey-Ramos v. F. Castillo, 169 D.P.R. 873, 882 (2007). Esto responde a que “las cuestiones relativas a la jurisdicción de un tribunal son privilegiadas y como tal deben atenderse y resolverse con preferencia a cualesquiera otras”. Id. Véase, además, Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950). Ello es así porque “[u]na sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente”. (Énfasis en el original.) Montañez v. Policía de Puerto Rico, 150 D.P.R. 917, 921 (2000). En otras palabras, cuando un tribunal determina que no tiene jurisdicción para intervenir en un asunto, pro-cede la inmediata desestimación del recurso apelativo conforme lo ordenado por las leyes y reglamentos para el perfeccionamiento de estos recursos. S.L.G. Solá-Moreno v. Bengoa Becerra, supra, pág. 682. Véanse, además: Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345, 355 (2003); Souffront v. A.A.A., supra, pág. 674.
Como la falta de jurisdicción de un tribunal no se puede subsanar, le corresponde a los foros adjudicativos examinar su propia jurisdicción, así como aquella del foro de donde procede el recurso ante su consideración. S.L.G. Szendrey-Ramos v. F. Castillo, supra, pág. 883. Recordemos que “[e]n numerosas ocasiones hemos expresado que este Tribunal tiene la responsabilidad de asegurarse que nuestro foro apelativo intermedio dispense justicia conforme al ámbito de autoridad que se le ha conferido estatutariamente”. Id. Por ello, “[e]n el ejercicio de esta *251 tarea, cuando el Tribunal de Apelaciones asuma jurisdic-ción en un recurso sin tenerla, es nuestro deber así decla-rarlo y desestimar el recurso”. (Enfasis en el original). íd. Véase, además, Morán v. Martí, 165 D.P.R. 356, 364 (2005).
B. En el ejercicio de su función revisora, el Tribunal de Apelaciones atiende sentencias parciales o finales, así como resoluciones y órdenes de carácter interlocutorio. La Regla 42.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, define sentencia como “cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse”.(2) Por otro lado, define la resolución como “cualquier dictamen que pone fin a un incidente dentro del proceso judicial”.
En Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 656 (1987), indicamos que cuando un tribunal emite una sentencia, se adjudican las controversias habidas en un pleito y se definen los derechos de las partes. Es decir, “[e]l término Sentencia se define como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa. ... Esto es, que adjudique una reclamación entre las partes de la cual se pueda apelar”. Cortés Pagán v. González Colón, 184 D.P.R. 807, 812—813 (2012). Véanse, además: Abrams Rivera v. E.L.A., 178 D.P.R. 914, 926 (2010); Torres Martínez v. Torres Ghigliotty, 175 D.P.R. 83, 94 (2008); U.S. Fire Ins. v. A.E.E., 151 D.P.R. 962, 967 (2000). Ello es así aunque la determinación haya sido titulada erróneamente como una resolución. Abrams Rivera v. E.L.A., supra, pág. 926; García v. Padró, 165 D.P.R. 324, 333 (2005); De Jesús v. Corp. Azucarera de P.R., 145 D.P.R. 899, 903 (1998).
*252 Por el contrario, las resoluciones no adjudican definiti-vamente la totalidad de una reclamación, sino que “ponen fin a un incidente dentro del proceso judicial, ya sea antes o después de dictarse la sentencia”. Corté s Pagán v. González Colón, supra, págs. 812-813. Véanse, además: Torres Martínez v. Torres Ghigliotty, supra, págs. 95-96; García v. Padró, supra, pág. 332.
C. Las disposiciones legales que establecen la jurisdic-ción y competencia del Tribunal de Apelaciones para aten-der recursos de apelación y de certiorari están recogidas en la Ley de la Judicatura de 2003, Ley Núm. 103-2003, 4 L.P.R.A. sec. 24(t) y ss., en la Regla 52.2 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, y en las Reglas 13 y 32 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.
El Art. 4.006 inciso (a) de la Ley de la Judicatura de 2003, supra, 4 L.P.R.A. sec. 24y(a), dispone que el Tribunal de Apelaciones conocerá mediante recursos de apelación de toda sentencia final que dicte el Tribunal de Primera Instancia. En cambio, señala en el inciso (b) que mediante certiorari expedido a su discreción, conocerá de cualquier resolución u orden que dicte el Tribunal de Primera Instancia. Por su parte, la Regla 52.2 de Procedimiento Civil, supra, destaca que los recursos de apelación para revisar sentencias emitidas por el Tribunal de Primera Instancia se deben presentar en el término jurisdiccional de treinta días, contados a partir del archivo en autos de la copia de la notificación de la sentencia dictada por el tribunal apelado. Igual término concede la Regla 13 del Reglamento del Tribunal de Apelaciones, supra.
Hemos expresado que los términos jurisdiccionales son improrrogables, por lo que no están sujetos a interrupción o cumplimiento tardío. S.L.G. Szendrey-Ramos v. F. Castillo, supra, págs. 881-882. “Se denominan estos términos como jurisdiccionales o fatales porque transcurren *253 inexorablemente, no importa las consecuencias procesales que su expiración provoque”. Id. Por ello, “una vez trans-curre un término de naturaleza jurisdiccional, el tribunal o la agencia estatal pierde jurisdicción para atender el asunto ante su consideración”. Id.
Conforme a la Regla 52.2 de Procedimiento Civil, supra, y la Regla 13 del Reglamento del Tribunal de Apelaciones, supra, el término que se dispone para revisar una resolución, al igual que para revisar una sentencia, es de treinta días contados a partir del archivo en autos de copia de la notificación de la resolución. Véase García Ramis v. Serrallés, 171 D.P.R. 250, 253 (2007). Ahora bien, cuando se presenta una petición de certiorari, el término es de cumplimiento estricto, mientras que cuando se presenta una apelación, el término es jurisdiccional. Regla 13 del Reglamento del TA, supra.
Ello acarrea una diferencia cuando se está ante un tér-mino de cumplimiento estricto, pues “los tribunales no es-tán atados al automatismo que conlleva un requisito de carácter jurisdiccional y pueden, por lo tanto, proveer el remedio que estimen pertinente, extendiendo el término según las circunstancias”. S.L.G. Szendrey-Ramos v. F. Castillo, supra, pág. 881. Véase, además, Rojas v. Axtmayer Ent., Inc., 150 D.P.R. 560, 564 (2000). “Esto significa que su observancia tardía es permisible sólo de existir y demostrarse a cabalidad una justa causa para no cumplir rigurosamente con el término en cuestión”. Figueroa v. Del Rosario, 147 D.P.R. 121, 127 (1998). Ahora bien, el que su cumplimiento no esté atado a la rigidez del término juris-diccional no significa que el Tribunal de Apelaciones goza de discreción para prorrogarlo automáticamente. Rojas v. Axtmayer Ent., Inc., supra, pág. 564. Para hacerlo, la parte deberá demostrar al tribunal (1) la existencia de justa causa para la dilación, y (2) las bases razonables que tiene para ella. Id., pág. 565. Ahora bien, la existencia de justa causa se deberá demostrar con “explicaciones concretas y *254 particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió por al-guna circunstancia especial razonable” y no “con excusas, vaguedades o planteamientos estereotipados”. (Enfasis en el original). Lugo v. Suárez, 165 D.P.R. 729, 738-739 (2005). Por lo tanto, “[e]n ausencia de estas condiciones, el tribunal carece de discreción para prorrogar el término y, por consiguiente, de acoger el recurso de certiorari ante su consideración”. Id., pág. 738.
Con este trasfondo doctrinal, evaluemos la naturaleza del recurso que tenía ante sí el Tribunal de Apelaciones.
III
Conforme reseñamos anteriormente, el Art. 4.006(a) de la Ley de la Judicatura de 2003, supra, establece que para que el Tribunal de Apelaciones pueda acoger un recurso como certiorari se debe tratar de la revisión de una resolu-ción y no de una sentencia. Al examinar los hechos de este caso, observamos que el 13 de mayo de 2009, el Tribunal de Primera Instancia emitió una sentencia parcial en la que adjudicó el monto de la cuantía principal reclamada por POC en su demanda sobre cobro de dinero y determinó expresamente que lo único que restaba por resolverse era la cuantía a la que ascendían los intereses por mora acu-mulados sobre la deuda principal. Cónsono con lo anterior, se celebró una vista evidenciaría en la que las partes esti-pularon y admitieron la cuantía de los intereses por mora reclamados por POC. De esa forma, como mismo expresó el Tribunal de Primera Instancia, la adjudicación de los inte-reses resolvía la reclamación de POC en su totalidad y con ello se daba fin a la controversia que era objeto de la demanda.
De acuerdo con lo anterior, es forzoso concluir que la sentencia del foro primario de 28 de septiembre de 2009, que adjudicó los intereses por mora, constituyó una senten- *255 cia y no una resolución, ya que puso fin al pleito. Al no tratarse de un incidente procesal dentro del pleito, era im-procedente atender ese recurso como un certiorari. Peor aun es que el foro apelativo intermedio, al acoger el recurso como certiorari, solicitó a los recurridos que justificaran la crasa dilación en la presentación de su recurso pero estos nunca comparecieron.
Aclarado que erró el foro apelativo intermedio al acoger el recurso como certiorari, veamos el derecho correspon-diente al efecto de la presentación de una petición de quie-bra por un deudor en los casos en que concurren varios garantizadores de una misma deuda.
IV
Recientemente señalamos en Marrero Rosado v. Marrero Rosado, 178 D.P.R. 476, 490 (2010), que “[l]a paralización automática es una de las protecciones más básicas que el legislador estadounidense instituyó en el Código de Quiebras para los deudores que se acogen a éste”. Con la paralización automática se impide, “entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra”. (Enfasis suplido). Id., pág. 491. Véase, además, 11 U.S.C.A. sec. 362.
La paralización automática no requiere notificación formal; surte efectos desde que se presenta la petición de quiebra y se extiende hasta que se dicte la sentencia final. íd. Véase, además, In re Jamo, 283 F.3d 392, 398 (1er Cir. 2002). La paralización automática impide que comience o continúe cualquier acción judicial o administrativa en contra del deudor, pendiente o que pudo comenzar antes del inicio de la petición de quiebra. 11 U.S.C. sec. 362(a)(1). A su vez, prohíbe las acciones judiciales y admi- *256 nistrativas que se inicien en contra del deudor para recu-perar reclamaciones hechas con anterioridad a la petición, íd. De igual forma, la paralización automática prohíbe las acciones para cumplir sentencias que se obtuvieron antes de que la petición de quiebra se iniciara. Id.
Ahora bien, “[1] a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste”. Cámara Insular Etc. v. Anadón, 83 D.P.R. 374, 380 (1961). Véanse, además: 11 U.S.C.A. sec. 524(e); 2 Collier on Bankruptcy Sec. 362.03[3] [d] (2010). El propósito de la ley “es proteger el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiere obligado conjuntamente con el deudor quebrado”. Cámara Insular Etc. v. Anadón, supra, pág. 380.
En Credit Alliance Corp. v. Williams, 851 F.2d 119 (4to Cir. 1998), el Tribunal de Apelaciones para el Cuarto Cir-cuito afirmó que la presentación de una petición de quiebra al amparo del Capítulo 11 paraliza los procedimientos en contra del deudor que la solicita y no así contra los garan-tizadores solidarios de una deuda. Asimismo, dejó claro que los garantizadores solidarios deben presentar sus de-fensas y apelaciones a tiempo cuando están como deman-dados en un pleito en el que el deudor principal se sometió a la quiebra. De no hacerlo se arriesgan a que las senten-cias recaídas se constituyan finales, adjudicadas en los mé-ritos e imposibles de relitigarse por el principio de res judicata. En ese caso, cuando el acreedor presentó una pe-tición de embargo contra todos los deudores, la Corte Federal de Quiebras sostuvo que las disposiciones de la Ley de Quiebra con relación a la paralización automática ha-cían nula una sentencia en rebeldía declarada en contra del deudor principal y los deudores solidarios. El Tribunal de Distrito federal revocó la determinación de la corte de quiebra y concluyó que la reclamación en contra de los ga-rantizadores no fue paralizada por la presentación de la *257 quiebra, ni mucho menos se convirtió en nula. De esa de-terminación, uno de los codeudores apeló.
El Tribunal Federal de Apelaciones para el Cuarto Cir-cuito determinó que
[e]l lenguaje claro de la Sección 362, sin embargo, dispone solo para la paralización automática de los trámites judiciales y la ejecución de sentencias “contra el deudor o su propiedad inmueble.” Véase Williford v. Armstrong World Industries, Inc., 715 F.2d 124, 126-27 (4to Cir. 1983). El historial legisla-tivo de esta disposición revela que el Congreso puso en vigor la Sección 362 para proveer protección a deudores en quiebra y facilitar la distribución ordenada de los activos del deudor en-tre sus acreedores. “La paralización automática es una de las protecciones fundamentales dispuestas en las leyes de quiebra. Esta le otorga al deudor un respiro de sus acreedores.
... Le permite al deudor tratar de establecer un plan de pago o reorganización, o simplemente ser relevado de las presiones financieras que lo llevaron a la quiebra.” S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reimpreso en 1978 U.S. Code Cong. & Admin. News, 5787, 5840-41; H.R.Rep. No. 595, 95th Cong., 2d Sess., 340 (1978), reimpreso en 1978 U.S. Code Cong. & Admin. News, 5963, 6296-97.
Nada dentro del contenido de la Sección 362 sugiere que haya sido la intención del Congreso que esta disposición le arrebatara a los acreedores del deudor en bancarrota la pro-tección que procuraban y recibían cuando solicitaban que un tercero garantizara la deuda. El Congreso sabía cómo extender la paralización automática a las partes que no estaban en quiebra cuando se propuso hacerlo. El Título 13, por ejemplo, contiene una disposición estrictamente definida para parali-zar los procedimientos contra una cantidad limitada de codeu-dores individuales de deudas del consumidor. Véase 11 U.S.C. sec. 1301(a). Bajo la Sección 362(a) no existe tal protección para los garantizadores de las quiebras por Título 11. Véase Williford, 715 F.2d, páginas 126-127.
Los garantizadores de los deudores que procedan en quiebra bajo el Título 11 están limitados a reclamaciones de rembolso o contribución hasta el límite permitido al amparo de 11 U.S.C. sec. 502(e) o la subrogación en los derechos del acreedor según 11 U.S.C. see. 509. Este esquema protege al acreedor asegurado “al extremo de que a un fiador o codeudor no le está permitido competir con el acreedor que éste ha asegurado hasta que la reclamación de la parte asegurada sea satisfecha en su totalidad.” 124 Cong.Rec. H11089 (Sept. 28, 1978) (de- *258 claraciones del Rep. Edwards), reimpreso en 1978 U.S. Code Cong. & Admin. News, 6436, 6449—50. Una lectura de la Sección 362 que restrinja la capacidad del acreedor para proceder en contra de su garantizador eliminaría la protección de acree-dores asegurados contemplada en la Ley de Quiebras. (Tra-ducción nuestra). Credit Alliance Corp. v. Williams, supra, pág. 121.
Refiriéndose a lo resuelto en A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4to Cir. 1986), cert. denegado, 479 U.S. 876, el Tribunal expresó que en circunstancias inusuales, un tribunal, conforme a la Sección 362, supra, puede paralizar procedimientos en contra de codeudores no amparados por la quiebra. Sin embargo, aclaró que esas circunstancias in-usuales ocurren cuando
“[e]xiste tal identidad entre el deudor y el tercero demandado de manera que podría decirse que el deudor es la parte deman-dada real y que una sentencia contra el tercero demandado constituirá, en efecto, una sentencia o resolución contra el deudor”, ... o cuando los procedimientos contra los codeman-dados nodeudores puedan reducir o minimizar “la propiedad del deudor [como el fondo de seguro del deudor] en perjuicio de los acreedores del mismo como conjunto.” (Traducción nuestra). Credit Alliance Corp. v. Williams, supra, pág. 121, citando a A.H. Robins Co. v. Piccinin, supra, págs. 999 y 1008.
Tras concluir que en ese caso no se configuraron las cir-cunstancias excepcionales que darían paso a la paraliza-ción a favor de los garantizadores, el tribunal determinó que la sentencia en rebeldía constituía una sentencia final en los méritos y los principios de res judicata impedían que se relitigaran defensas que pudieron ser invocadas en el tribunal estatal.
A igual conclusión llegó el Segundo Circuito en Queenie, Ltd. v. Nygard Intern., 321 F.3d 282, 287 (2do Cir. 2003), al establecer que la petición de quiebra de un deudor paraliza su apelación y la de su corporación, pero no así la de otros codemandados en el pleito. Véase, además, The Bankruptcy Code’s Automatic Stay, 895 PLI/Comm 661, 674 (2007) (Debtor’s filing of bankruptcy petition stayed his appeal *259 and that of his wholly owned corporation, but not that of co-defendants).
En fin, salvo circunstancias excepcionales, “la iniciación del procedimiento de quiebra es una defensa personal que puede invocar el deudor peticionario únicamente, pero que no beneficia a los codeudores”. (Traducción nuestra.) The Bankruptcy Code’s Automatic Stay, supra. Véanse, además: In Re Robert F. Youngblood Constr Co., 2012 Bankr. Lexis 1214 (Bankr. E.D.N.C. 2012); Schumacher v. White, 429 B.R. 400, 407 (2010); Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 286 F. Supp. 2d 73, 76 (D. Mass. 2003); United States v. Rassmussen, 184 F. Supp. 351 (Minn. 1960); Trustees of Schools, etc. v. Chamberlain, 78 N.E.2d 525 (Ill. 1948); Green v. Welsh, 956 F.2d 30 (2do Cir. 1992).
Veamos, entonces, si la paralización automática gene-rada a raíz de la presentación de la petición de quiebra de HTP benefició a los codeudores recurridos.
V
De entrada debemos señalar que es incorrecta la deter-minación del foro apelativo intermedio de que la sentencia de 28 de septiembre de 2009 es nula y carece de efecto jurídico entre las partes luego de que el 7 de julio de 2009 HTP presentara la petición de quiebra. Conforme reseña-mos anteriormente, salvo en circunstancias excepcionales, que no están presentes aquí, la responsabilidad de un ga-rantizador no se altera por la presentación de una petición de quiebra hecha por el deudor principal. Por consiguiente, cuando en un pleito hay varios codeudores, garantizadores o fiadores, estos no se pueden amparar en la quiebra de uno de los deudores para alegar también la paralización del proceso en su contra. Si lo hacen y la sentencia adviene final y firme, los principios de res judicata le imposibilitan *260 relitigar el asunto. Véase Credit Alliance Corp. v. Williams, supra.
Al recapitular los hechos de este caso, observamos que el 28 de septiembre de 2009, el Tribunal de Primera Ins-tancia emitió la sentencia que condenó a los recurridos a pagar $148,054.69 en concepto de intereses por mora. Co-pia de la notificación de esa sentencia se archivó en autos el 2 de octubre de 2009. Así, pues, los recurridos tenían hasta el 1 de noviembre de 2009 para acudir al Tribunal de Apelaciones. Sin embargo, el 19 de octubre de 2009, HTP presentó la moción para que se dejara sin efecto la senten-cia por motivo de la petición de quiebra que había presentado. El Tribunal de Primera Instancia nunca dejó la sentencia sin efecto. Aunque el 23 de octubre de 2009, mediante resolución notificada el 13 de noviembre si-guiente, decretó el caso paralizado, con ello no afectó el término de los recurridos para apelar. Es conocido que el Tribunal de Primera Instancia no puede prorrogar el tér-mino para apelar. Plan Salud Unión v. Seaboard Sur. Co., 182 D.P.R. 714, 721 (2011); Vélez v. A.A.A., 164 D.P.R. 772, 786 (2005). El término no estaba paralizado para los recu-rridos, pues ellos no se acogieron a la petición de la Ley Federal de Quiebras. Por consiguiente, erró el foro apela-tivo intermedio al acoger el recurso presentado, pues al momento en que lo hizo, ya había transcurrido el término de treinta días que tenían las partes para apelar.
Los recurridos no pueden alegar confusión ante la pre-sentación de la petición de quiebra. Aunque el 19 de octu-bre de 2009 —antes de vencer el plazo para apelar— HTP presentó la moción para que se dejara sin efecto la senten-cia por motivo de la presentación de la petición de quiebra, lo cierto es que para ese entonces los recurridos descono-cían cuál iba a ser la determinación del Tribunal de Pri-mera Instancia. No estaban impedidos de presentar la ape-lación oportunamente, pues la paralización a favor de HTP no los cobijaba a ellos ni paralizaba los términos para ir en *261 apelación. Esto se debe a que la presentación de la petición de quiebra de HTP es un incidente aparte que no paralizó los efectos de la sentencia en contra de las demás partes, como lo haría una moción al amparo de la Regla 43 o 47 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. Y. Recordemos que según el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3108, cuando los recurridos firmaron la garantía, se convirtieron en garantizadores solidarios de la obligación que HTP contrajo con POC. Por ello, POC puede exigirle su acreencia a cualquiera de los deudores o a todos simultáneamente. Resolver lo contrario implicaría soste-ner que la presentación de una petición de quiebras tiene el efecto de desgarrar la solidaridad pactada.
Como último señalamiento, cabe apuntar que POC pre-sentó una moción al amparo de la entonces vigente Regla 51.7 de Procedimiento Civil de 1979, supra;(3) para cobrar de los recurridos la sentencia que advino a su favor. Esta regla, como explicó el Comité Asesor de las Reglas de Pro-cedimiento Civil, se conceptualizó para evitar que “deudo-res solidarios que no formaron parte de un pleito obstacu-licen e impidan que el acreedor presente una reclamación contra éstos como co-deudores solidarios”. (Énfasis nuestro). Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, Informe de Reglas de Procedimiento Civil, marzo 2008, págs. 582-583. Sin em *262 bargo, el Comité Asesor recomendó su eliminación, pues “lo dispuesto en la regla es contrario al ordenamiento jurídico, ya que permite ejecutar una sentencia contra una persona que no fue parte en un pleito y sobre la cual el tribunal no adquirió jurisdicción”. (Énfasis nuestro). Id., pág. 583.
Como se aprecia, utilizar esa regla era improcedente en este caso, toda vez que POC demandó desde el inicio a todos los codeudores, por lo que estos eran parte. Lo que procedía era solicitar la ejecución de la sentencia, conforme la Regla 51.2 de Procedimiento Civil de 1979, supra, vi-gente al momento. Sin embargo, aunque POC invocó la regla incorrecta, su petitorio procedía.
VI
Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones pues, al revisar la sentencia del Tribunal de Primera Instancia de 28 de septiembre de 2009, carecía de jurisdicción para hacerlo. Asimismo, declaramos que la sentencia de 28 de septiembre de 2009 del Tribunal de Primera Instancia no surte efecto en cuanto a HTP, pero sí en cuanto a los recurridos, pues la petición de quiebra no los cobija. Por último, se devuelve el caso al Tribunal de Primera Instancia, Sala de Ponce, para la continuación de los procedimientos de forma compatible con lo resuelto aquí.

Se dictará sentencia de conformidad.

 Las garantías disponen como sigue:

“Garantía personal y Autorización para Investigar

“Queda expresamente entendido y acordado que el abajo firmante garantiza solidariamente, en su carácter personal, el pago de cualquier suma adeudada por Hermanos Torres Pérez a Peerless Oil & Chemicals, Inc., incluyendo los intereses aplicables, costos de cobranza y gastos legales. Reconocemos que Peerless podrá co-brar cualquier cantidad adeudada y no pagada sin antes tener que cobrar del deudor primario. Aceptamos, según aplique, todos los términos antes indicados. Renuncia-mos a ser notificados de cualquier enmienda a los términos de pago u otros acuerdos entre el deudor primario y Peerless Oil & Chemicals, Inc. No será necesario que Peerless proceda contra otras garantías o colaterales provistas por o a beneficio del deudor primario antes de solicitarnos el pago, judicial o extrajudicialmente.
“Autorizamos a Peerless Oil & Chemicals, Inc. a obtener información de crédito sobre los suscribientes garantizadores. Reconocemos que Peerless Oil & Chemicals, Inc. podrá notificar a las agencias de crédito la experiencia de crédito de nuestra cuenta”. Apéndice, pág. 89.

 La Regla 43.1 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III (ed. 2001), disponía en palabras parecidas que “el término ‘sentencia’ incluye cualquier deter-minación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse”.

 “Regla 51.7. Procedimientos en sentencia contra deudores solidarios
“Cuando se obtiene una sentencia contra uno o más entre varios deudores soli-dariamente responsables de una obligación, aquellos deudores que no fueren partes en la acción, podrán ser citados para que comparezcan a mostrar por qué causa no han de estar obligados por la sentencia de igual modo que si hubieren sido deman-dados desde un principio. La citación, conforme lo dispuesto en esta regla, deberá relacionar la sentencia, y requerir a la persona citada para que comparezca deter-minado día y hora a mostrar causa de por qué no ha de estar obligada por dicha sentencia. No será necesario entablar nueva demanda. La citación deberá acompa-ñarse de una declaración escrita y jurada del demandante, su agente, representante o abogado, manifestando que la sentencia o parte de ella, permanece incumplimen-tada y expresando además, la cantidad que a cuenta de la misma se debiere.
“Hecha la citación, el deudor citado deberá comparecer en la fecha que se indica en la citación, y en dicha vista podrá aducir cualquier defensa de hecho y de derecho para eximirle de responsabilidad. Las cuestiones así planteadas podrán substan-ciarse como en los demás casos”. 32 L.P.R.A. Ap. III (ed. 2001).